```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
-------------------------------------------------------------X
JOSEPH MAZZEI, individually and on behalf of
the Fee-Split Class,

                              Plaintiff,

     -against-

THE MONEY STORE, TMS MORTGAGE, INC.
and HOMEQ SERVICING, INC., WELLS FARGO
BANK N.A.,

                              Defendants.
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/30/2020_
```

20 Civ. 3702 (AT)

**MEMORANDUM**
**AND ORDER**

ANALISA TORRES, District Judge:

      Plaintiff, Joseph Mazzei, brings this action against Defendants, The Money Store, TMS Mortgage, Inc., Homeq Servicing, Inc., and Wells Fargo Bank N.A. (collectively "Defendants"), asserting claims under Federal Rules of Civil Procedure 63(d) and 37 for fraud on the court and failure to obey discovery orders in *Mazzei et al. v. The Money Store, et al.*, No. 01 Civ. 5694 (S.D.N.Y. 2001) ("*Mazzei I*"). Defendants move to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is GRANTED.

## BACKGROUND[1]

In 2001, Joseph Mazzei sued Defendants The Money Store, TMS Mortgage, Inc., and Homeq Servicing Corp.[2] In 2009, Plaintiff moved for class certification, claiming that Defendants had charged Plaintiff and the proposed class for attorneys' fees that were in actuality split between law firms and Fidelity National Foreclosure Solutions ("Fidelity") for various administrative and technical fees, in violation of Defendants' contract with Plaintiff. Compl. ¶ 15, ECF No. 1.

In the course of class discovery, Plaintiff learned that records of certain loans would be purged from Defendants' computer systems, and moved for an injunction to compel Defendants to retain that information. *Id.* In opposition, Defendants submitted a declaration to the court, attesting that a litigation hold was in place ensuring that Defendants would preserve the records, and that Defendants had not destroyed relevant documents. *Id.* ¶ 16. These assurances caused Plaintiff to withdraw his motion. *Id.* ¶ 19.

In 2013, Defendants informed Plaintiff that that they no longer had control of the databases on which the payment data at issue was stored. *Id.* ¶ 26. In 2006, Defendants had sold Homeq Servicing Corp., where the databases were housed, to Barclays Real Estate Capital ("Barclays"), relinquishing

---

[1] The following facts are taken from the complaint and accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In addition, on a motion to dismiss, the Court can consider documents outside the complaint and its exhibits that the opposing party "has notice of and that are integral to the complaint." *Cummings v. City of New York*, No. 19 Civ. 7723, 2020 WL 882335, at *3 n.2 (S.D.N.Y. Feb. 24, 2020) (internal quotation marks omitted). A document is integral to a complaint where the complaint "relies heavily upon its terms and effect," *BankUnited, N.A. v. Merritt Envtl. Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) (internal quotation marks omitted), or "extensively quotes from and refers to" the document, *Cummings*, 2020 WL 882335, at *3 n.2. The Court therefore draws its facts from, along with the complaint, the transcript of the Honorable John G. Koetl's February 28, 2013 hearing, Feb. 28, 2013 Tr., ECF No 38-1; the Honorable Ronald L. Ellis's July 18, 2014 opinion, *Mazzei I*, 2014 WL 3610894 (S.D.N.Y. July 21, 2014); the transcript of Judge Koetl's November 24, 2014 hearing, Nov. 24, 2014 Tr., *Mazzei I*, No. 01 Civ. 5694, ECF No. 436, and Judge Koetl's May 29, 2015 order, *Mazzei I*, 308 F.R.D. 92, (S.D.N.Y. 2015). It is undisputed that all parties had notice of the documents, and the complaint quotes heavily from these documents. *See, e.g.*, Compl. ¶¶ 27–29, 40–43, 64–71, 84–86. Moreover, Plaintiff relies on the terms and effect of the judges' statements to assign duties and fault to Defendants. *See, e.g.*, Pl. Opp'n at 22–23, 25–28, 32, ECF No. 43.

[2] The Money Store, Inc., Homeq Servicing Corp., and TMS Mortgage, Inc., are no longer in business. Compl. ¶¶ 6–8. Wells Fargo is the parent company of Wachovia, which owned all three entities until 2006, during the time at issue. Def. Mem. at 1 n.1, ECF No. 37. Because the defendants and plaintiffs in *Mazzei I* and the instant case are the same or in privity, the Court refers to both sets of defendants as "Defendants" and plaintiff in both cases as "Plaintiff."

2

control of the databases. *Id.* ¶ 27.  In turn, Barclays in 2010 sold Homeq to Ocwen Loan Servicing, LLC, which closed the operations. *Id.*  Defendants had not retained data regarding the law firm's or Defendants' payment of technology or administrative fees to Fidelity ("Fee Payment Data"), despite their assurances in their 2009 declaration. *Id.* ¶ 28.  On February 28, 2013, Plaintiff complained to the court about Defendants' failure to keep the records.  *See generally* Feb. 28, 2013 Tr., ECF No. 38-1.

Plaintiff then subpoenaed Fidelity and its successors, demanding "[d]ocuments identifying all 'technology and referral fee', 'administrative support fee' or 'outsource management fee['] payments received by Fidelity from The Money Store Defendants, HomEq or legal service providers. . . ." Compl. ¶ 33.  Only one of Fidelity's successors, Lender Processing Services ("LPS") stated that it had responsive information, which included invoices from law firms to Defendants and billing records regarding services provided to the law firms by Fidelity on approximately 300,000 loans, held on the New Invoice System ("NIS"). *Id*. ¶¶ 34–35.  However, LPS told Plaintiff that the "information was inaccessible" and it could cost "tens of millions of dollars to retrieve" and place in a readable format. *Id.*

Plaintiff informed Defendants of LPS's response. *Id.* ¶ 35.  Defendants refused to pay to retrieve the data. *Id.*  In October 2013, Plaintiff moved to compel Defendants to determine whether the data could be retrieved from LPS, as a sanction for failing to preserve the information. *Id.* ¶ 36. Defendants objected, stating that "data entries" on NIS "could not be downloaded" to Defendants' system and they were "unaware of *any* information on 'fee splitting'" and "have no reason to believe that any such information *ever* existed" on NIS. *Id.* ¶ 37 (emphasis in original).

The Honorable Ronald L. Ellis granted Plaintiff's motion to compel on July 18, 2014. *Mazzei I*, 2014 WL 3610894, at *1; Compl. ¶ 40.  In a 25-page order, Judge Ellis held that sanctions were warranted for Defendants' failure to preserve the Fee Payment Data. *Mazzei I*, 2014 WL 3610894, at

\*3–8. Judge Ellis concluded that Defendants had the duty to preserve the information, and willfully did not. *Id.* at \*3–7; Compl. ¶ 40. Judge Ellis further stated "[w]hen evidence is destroyed, the party who sought the evidence should be compensated for any discovery necessary to identify alternative sources of information," and ordered that Defendants "1) bear the cost of determining whether the New Invoice System data currently in the possession of LPS is searchable; [and] 2) pay Mazzei his attorneys' fees for this application." *Mazzei I*, 2014 WL 3610894, at \*8 (internal quotation marks and citation omitted).

The parties continued to litigate the discovery of the Fee Payment Data allegedly on NIS. Defendants continued to represent, in motion papers, declarations, and hearings, that a litigation hold had been in place in 2009, that they never had possession or control of the data on NIS, that they could not download or retain the data on NIS, and that there was no Fee Payment Data on NIS. Compl. ¶¶ 44–63. Defendants also submitted an affidavit from a former LPS executive, which stated that NIS did not contain Fee Payment Data, and that Defendants did not have access to the internal servers on which the Fee Payment Data was held. *Id.* ¶ 52.

In a hearing on November 24, 2014, the Honorable John G. Koetl, considering various motions *in limine*, Plaintiff's motion for trial sanctions against Defendants for spoliation, Defendants' objections to Judge Ellis' July 2014 Order, and other pre-trial motions, affirmed Judge Ellis' July 2014 ruling. *See generally* Nov. 24 Tr., *Mazzei I*, ECF No. 436. The court considered Plaintiff's motion for sanctions and Defendants' objections to sanctions based on their failure to preserve data, and found that sanctions were fitting. *Id.* at 51:1–61:25. The court also found that Plaintiff was prejudiced, though "it is also clear that the plaintiff has not sought to obtain information with the diligence that would be expected before a sanctions motion," such as any depositions of Fidelity or LPS, or document searches for "other sources that should have provided more direct evidence—namely, the records of the bills sent to borrowers and the payments by the defendants to Fidelity

and/or the lawyers," and that "plaintiff fails to point to any court order requiring discovery that the defendants ignored." *Id*. at 59:12–60:5.

Judge Koetl denied Plaintiff's motion for additional sanctions, finding that spoliation of the data was not highly prejudicial because there were ample alternative sources of information that would contain the Fee Payment Data but which Plaintiff did not pursue. *Id.* at 64:5–65:9.  The Court found that NIS "would not have reflected the actual payments to Fidelity or the lawyers, and it would not have reflected the charges to members of the plaintiff class.  The plaintiff is attempting to use the renewed sanctions motion to make up for his own lack of diligence in pursuing the information he claims he needs." *Id.* at 67:9–14.

*Mazzei I* went to trial in December 2014, and ended in a verdict for the Defendants.  Compl. ¶¶ 72–78.  Plaintiff then moved for a new trial under Federal Rule of Civil Procedure 59, contending that the failure to grant additional sanctions for Defendants' "failure to preserve fee-splitting evidence" was substantial error. *Id.* ¶ 79.  In its opposition to the motion, Defendants continued to represent that NIS did not contain records of Fee Payment Data. *Id.* ¶ 82.  The court denied Plaintiff's motion, *id.* ¶ 85, and the Second Circuit affirmed, *id.* ¶¶ 87–90.

Approximately three years later, in a case parallel to *Mazzei I* against Barclays, a representative of the successor to LPS, Black Knight, was deposed (the "2018 Deposition"). *Id.* ¶ 99.  In the course of that deposition, the representative testified that she had the "capability today to look up or have someone look up" whether administrative fees were paid for a specific borrower, including whether such fees existed between 2006 and 2010.  Compl. ¶¶ 102–103.  She also attested that "the vendor" can view certain technology fees within NIS, 2018 Dep. at 83:16–20, ECF No. 1-1, and that certain information from NIS could be downloaded, though she did not specify if that information included the payment of fees, *id.* at 137:7–138:11.  She further testified that the system indicated whether amounts invoiced were paid.  Compl. ¶ 110.

Based on this deposition, Plaintiff alleges Defendants committed fraud on the court by making the following types of fraudulent statements during the course of *Mazzei I*:

- that they had placed a litigation hold on information they had regarding Fee Payment Data in 2009, when in fact they did not (the "Litigation Hold Statements");
- that they could not download (and thus retain) the information on NIS, when Plaintiff alleges the 2018 Deposition demonstrates they could (the "Download Statements");
- that NIS never contained Fee Payment Data, when Plaintiff alleges the 2018 Deposition demonstrates it did (the "Data Availability Statements"); and
- that the information on NIS from Fidelity and LPS was inaccessible and only readable through prohibitively expensive work, when Plaintiff alleges the 2018 Deposition demonstrates it was easily accessible on request from Fidelity (the "Inaccessibility Statements").

## DISCUSSION

I.     Legal Standards

    A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a Rule 12(b)(1) motion to dismiss, the plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id.* On such a motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, the court need not "credit a complaint's conclusory statements without reference to its factual context."

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) (internal quotation marks and citation omitted).

    B.  Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns*, 493 F.3d at 98.

    II.  <u>Jurisdiction</u>

The complaint alleges that this Court has subject matter jurisdiction based on Federal Rules of Civil Procedure 60 and 37.  Compl. ¶ 11.  In the alternative, Plaintiff argues that the Court has subject matter over his Rule 37 claim based on supplemental jurisdiction under 28 U.S.C. § 1367(a).  Pl. Opp'n at 20, ECF No. 43.  The Court agrees, and therefore Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

Rule 60(d) cannot in itself create jurisdiction.  Federal Rules of Civil Procedure do not provide an independent ground for subject matter jurisdiction over an action for which there is no other basis for jurisdiction. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir. 1990).  Therefore, an independent action, whatever the claim, requires independent jurisdiction. *Id.*  However, an independent action for "relief from judgment" based on Rule 60(d) is brought under the court's inherent equitable powers, allowing "the district court that entered the original judgment [to

have] inherent 'ancillary' equitable jurisdiction to entertain the suit." *Id*. at 69; *United States v. Beggerly*, 524 U.S. 38, 45–46 (1998) (discussing Rule 60(d)'s predecessor rule).

Plaintiff's prayer for relief requests that this Court (1) award Plaintiff attorneys' fees and costs from *Mazzei I* based on a finding that Defendants committed fraud on the court in *Mazzei I* under Rule 60(d)(3) or a finding that Defendants violated numerous discovery orders under Rule 37, and (2) award Plaintiff attorneys' fees and costs incurred in uncovering the alleged fraud and violation of discovery orders. Compl. at 55. Neither of these requests ask this Court to "set aside a judgment" under Rule 60(d)(3), such that the Plaintiff would be asking for relief from judgment. Fed. R. Civ. P. 60(d)(3).

Read generously, however, Plaintiff requests that the Court find the judgment of *Mazzei I* was issued in error, and award attorneys' fees and costs for that action. Compl. at 55 (requesting "that this Court find the Defendants committed fraud on the court in the Mazzei Action under FRCP Rule 60(d)(3)"); *cf. United States v. Beggerly*, 524 U.S. at 46 (noting that historically, a bill for fraud on the court "is a continuation of the former suit, on the question of . . . jurisdiction"); *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 245 (1944) ("[I]n cases where courts have exercised the power [to act on a fraud on the court claim] the relief granted has taken several forms: setting aside the judgment to permit a new trial, altering the terms of the judgment, or restraining the beneficiaries of the judgment from taking any benefit whatever from it."), *overruled on other grounds by Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976). At this stage of the litigation, therefore, this Court concludes that it has subject matter jurisdiction over Plaintiff's claim under its inherent ancillary equitable authority to consider suits for relief from judgment.

Because this Court has subject matter jurisdiction over Plaintiff's 60(d)(3) claim, it can exert supplemental jurisdiction over Plaintiff's claim under Rule 37 pursuant to 28 U.S.C. §1367(a). Section 1367(a) permits district courts to exert jurisdiction over claims that "form part of the same

case or controversy." 28 U.S.C. §1367(a).  Claims are part of the same case or controversy where they "derive from a common nucleus of operative fact."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).  Here, Plaintiff bases both his Rule 60(d)(3) claim and his Rule 37 claim on the discovery disputes in *Mazzei I*.  The Court, therefore, has supplemental jurisdiction over this claim.

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

III.     Federal Rule of Civil Procedure 60(d)(3) Claim

Rule 60(d)(3) permits a plaintiff to bring an independent action challenging an earlier judgment as caused by fraud on the court.  Fed. R. Civ. P. 60(d)(3).  Plaintiff alleges Defendants committed fraud on the court by lying to the court from 2009 to the close of *Mazzei I*, by making the Litigation Hold Statements, the Download Statements, the Data Availability Statements, and the Inaccessibility Statements.  However, any fraud arising from these statements has either already been litigated or is not "sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata."  *United States v. Beggerly*, 524 U.S. at 46 (internal quotation mark omitted).

    A.  Res Judicata

Initially, the Litigation Hold Statements are precluded by res judicata.  A claim is precluded where the party asserting res judicata shows "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015)

(internal quotation marks, alteration, and citation omitted).  The parties do not dispute factors one and two.  Only the final factor is, therefore, at issue.

In the Second Circuit, claims are considered the same where the "transactions" at issue in both cases are the same; that is, where "the same evidence is needed to support both claims" and "the facts essential to the second were present in the first." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *see also King v. Galluzzo Equip. & Excavating, Inc.*, No. 00 Civ. 6247, 2001 WL 1402996, at *8 (E.D.N.Y. Nov. 8, 2001) ("[T]he claims were barred because the rights sought to be enforced by appellant in his second lawsuit stem from the same transaction out of which the original action arose, and thus could have and should have been brought in the original action." (internal quotation marks omitted)).  Therefore, res judicata can preclude "not only . . . every matter which was offered and received to sustain or defeat the claim or demand, but . . . any other admissible matter which might have been offered for that purpose." *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir.1996)).  The Second Circuit also applies this test to independent actions for relief from a prior judgment. *Weldon v. United States*, 845 F. Supp. 72, 81 (N.D.N.Y. 1994), *aff'd*, 70 F.3d 1 (2d Cir. 1995).

To that end, newly discovered evidence that would be offered for the same claim generally does not overcome res judicata.[3] *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006).  However, an exception to the newly discovered evidence rule exists where the evidence "was either fraudulently

---

[3] Newly discovered evidence of acts done during the litigation, which would be used as support of the same judgment, is distinct from acts done after the complaint is filed that would give rise to a new, different claim. *Proctor v. LeClaire*, 715 F.3d 402, 412 (2d Cir. 2013) (holding there was no res judicata bar where the plaintiff brought new claims against the same defendant based on actions that began three years after filing suit).  Plaintiff does not allege any new acts which would give rise to claims separate from the *Mazzei I* judgment, but that he has discovered new evidence that he could have used in support of his position in *Mazzei I*. *See, e.g.*, Pl. Opp'n at 31 ("Because of Defendants' repeated misrepresentations regarding the location and condition of the Payment Evidence, the Fee-Split Class was prevented from presenting critical evidence to the jury in *Mazzei I* which would have completely undercut Defendants' principal defense.").

concealed or when it could not have been discovered with due diligence." *Id.* at 292–293 (internal quotation mark and citation omitted).

Under these principles, any fraud claims based on the Litigation Hold Statements are barred by res judicata. All essential facts regarding the litigation hold were present in *Mazzei I*, and in fact, Defendants were sanctioned for failing to reveal that they did not put a litigation hold in place. Compl. ¶¶ 40–43. The only new evidence provided in the 2018 Deposition regarding the litigation hold was the merger of various of Defendants' entities, demonstrating that Defendants were "not telling the truth" when they represented to the Court that they had been "advised" and "assured" by one of the merged-out entities that a litigation hold was in place. Compl. ¶ 100.

But when Judges Ellis and Koetl issued their orders sanctioning Defendants for their failure to put a litigation hold in place, they acknowledged that Defendants had not done so. *See* Nov. 24, 2014 Tr., *Mazzei I*, at 63:18–23 ("[Defendants] should have . . . preserve[d] the New Invoice system after they had represented to the court in June 2009 that the system contained the information that was being sought by the plaintiff[.]"); *Mazzei I*, 2014 WL 3610894, at *6 ("Defendants had affirmatively represented to the Court that the information in the New Invoice System was being preserved. . . Thus, Defendants have failed to preserve the data . . . after having affirmed that the data was being preserved."). The evidence provided in the 2018 Deposition did not inform Plaintiff of essential facts that he was not aware of in *Mazzei I*: that Defendants had not in fact put a litigation hold in place. The claims regarding the litigation hold are, therefore, precluded. *See Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) ("[N]either of [the newly discovered evidence rule] exceptions is relevant herein, since we believe that even without the alleged newly discovered evidence, Saud had sufficient notice at the time of the [Initial] Action of the essential facts that are now alleged in support of his [Second Action] complaint.); *Space Hunters, Inc. v. United States*, No. 10 Civ. 6335, 2011 WL 1899627, at *4 (S.D.N.Y. May 17, 2011), *aff'd*, 500 F. App'x 76 (2d Cir. 2012) (finding a fraud upon

11

the court claim barred where the issue was litigated in the district court, in the Second Circuit, and again at trial after remand).

For the same reason, the alleged fraud based on the Download Statements is barred by res judicata. In essence, those statements speak to the same issue as the Litigation Hold Statements: that Defendants could and should have preserved the information, but did not. *See, e.g.*, Compl. ¶¶ 57–58. As that issue was litigated, and the newly discovered evidence that some reports could be downloaded is not a new essential fact to the determination that defendants had the ability and should have preserved the information, a fraud claim based on the Download Statements is barred by res judicata.

Because the Court finds that the Data Availability and Inaccessibility Statements do not give rise to a fraud upon the court claim, it need not decide whether these claims are also precluded. *Infra* § III.B.

    B. Fraud on the Court

Fraud on the court, as opposed to fraud on a litigant, either attempts to or does "defile the court itself" or is "perpetrated by officers of the court" such that "the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182 (2d Cir. 2010) (quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995)); *see also Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 611 (S.D.N.Y. 2011) ("In order for the Court to grant sanctions based upon such a fraud, it must be established by clear and convincing evidence that [the party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." (quoting *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002), *decision clarified*, No. 10 Civ. 3629, 2011 WL 5925012 (S.D.N.Y. Nov. 16, 2011), *and aff'd*, 510 F. App'x 74 (2d Cir. 2013)). The evidence demonstrating this fraud must be clear and convincing, so that it "produces in

the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," and is "so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Abbot Laboratories v. Adelphia Supply USA*, No. 15 Civ. 05826, 2020 WL 1429472, at *5 (E.D.N.Y. Mar. 24, 2020) (internal quotation marks and alterations omitted).

The type of fraud on the court that can sustain an independent action under Rule 60(d) is "narrower in scope" than fraud on the court claims brought under Rule 60(b), which allows for claims brought during the course of litigation. *LinkCo*, 367 F. App'x at 182. Rule 60(d) fraud on the court claims are available only where the fraud "seriously affect[s] the integrity of the normal process of adjudication." *Id.* (internal quotation marks and alterations omitted). In short, independent actions for fraud on the court are available only to "prevent a grave miscarriage of justice." *Beggerly*, 524 U.S. at 46.

Therefore, "neither perjury nor nondisclosure" meets the high standard for fraud on the court. *Gleason v. Jandrucko*, 860 F.2d 556, 559–60 (2d Cir. 1988). However, "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process," or where "an attorney was involved in the perpetration of the fraud," the calculus differs. *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972).

The Data Availability Statements and Inaccessibility Statements do not meet this standard. Even if the Fee Payment Data were available on NIS and accessible to Defendants, Plaintiff has not shown by clear and convincing evidence that the issue of Fee Payment Data on NIS or the Fee Payment Data's inaccessibility was sufficiently "central to the truth-finding process." *McMunn*, 191 F. Supp. 2d at 445.

Plaintiff alleges that the lack of direct evidence of payment from law firms to Fidelity was central to the jury's decision and to Judge Koetl's denial of a new trial under Rule 59. Compl. ¶¶ 74–76, 84–85. However, taking those statements as true, the facts central to the jury's decision was a lack of evidence, not a lack of evidence *on NIS*. Compl. ¶¶ 74–76. NIS was not the only source of documentary evidence available to Plaintiff to establish payments from law firms or Defendants to Fidelity. As Judge Koetl observed, Plaintiff could have deposed Fidelity's employees or sought the information from the law firms themselves. *Mazzei I*, 308 F.R.D. 92, 102 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016). Foreclosing one source of discovery when multiple others were available to Plaintiff does not stop the "the judicial machinery" from "its impartial task of adjudging cases." *LinkCo*, 367 F. App'x at 182.

Similarly, Judge Koetl denied Plaintiff's Rule 59 motion because, despite having uncovered and shown to the jury invoices from NIS regarding the named Plaintiff, the jury nevertheless decided against him. *Mazzei I*, 308 F.R.D. at 100 ("Even with the evidence from the New Invoice System, Mazzei could not prove his individual claim. There is thus no basis to believe that evidence from the New Invoice System would have proved any claim with respect to the class."). *Id.* Judge Koetl stated that, "[o]n this basis alone, . . . [P]laintiff's motion based on the New Invoice System should be denied." *Id.* Judge Koetl did not base his decisions on the Data Availability or Inaccessibility Statements, but because "it [was] clear from the jury's verdict that any additional evidence from the New Invoice System would not have made any difference in this trial." *Id.* Therefore, the Data Availability Statements and Inaccessibility Statements were not central to his decision.

Moreover, statements regarding a single source of evidence, in a 15-year-long case that culminated in a two-week-long trial, do not rise to the level of sustained, insidious fraud that creates fraud on the court. For instance, in *McMunn v. Memorial Sloan-Kettering Cancer Center*, when considering the issue in the context of a motion for sanctions rather than the higher standard of an

14

independent action, the court found fraud on the court where it was uncontroverted that a plaintiff denied information existed, resulting in it being destroyed irretrievably such that defendants could not have obtained it from another source, lied to prevent defendants finding an essential witness to depose, and lied about having edited audio tapes produced to defendants regarding a central issue. 191 F. Supp. 2d at 446–460; *see also Hazel-Atlas Glass Co.*, 322 U.S. at 240–44 (holding there was fraud on the court where an attorney for the defendant intentionally fabricated an article, used that article to support the United States Patent Office's grant of a patent and to get the circuit court to hold for the defendant, and paid the individual induced to sign the article and an affidavit stating he wrote the article).  Defendants' actions do not rise to that level.  Instead, Plaintiff alleges fraud regarding one system in a sprawling case, which did not deny him the ability to acquire the evidence from other sources, and so did not "seriously affect the integrity of the normal process of adjudication." *LinkCo*, 367 F. App'x at 182 (internal alterations omitted).  These allegations do not give rise to clear and convincing evidence of the "grave miscarriage of justice" required for fraud on the court. *Beggerly*, 524 U.S. at 46.

Because the alleged fraudulent statements are either barred by res judicata or do not give rise to fraud on the court claims, Defendants' motion to dismiss Plaintiff's Rule 63(d) claim is GRANTED.

   IV.   <u>Rule 37 Sanctions</u>

Plaintiff also requests that the Court "find the Defendants violated numerous disclosure orders in the Mazzei Action, and award the attorneys' fees and expenses incurred by the Plaintiffs in that action under FRCP Rule 37." Compl. at 55.  It is not clear whether Plaintiff is bringing an independent claim under Rule 37, or if Plaintiff is requesting that the Court, if it determines the

judgment illegitimate under Rule 63(d), modify the judgment to include sanctions under Rule 37.  In either case, Plaintiff's request fails.

Plaintiff cannot bring an independent claim under Rule 37, because Rule 37 does not create a cause of action.  *See George & Co. LLC v. Spin Master Corp.*, No. 19 Civ. 4391, 2020 WL 3865098, at *8 (E.D.N.Y. July 7, 2020) ("Rule 37(e) is a procedural rule governing discovery and preservation of electronic evidence and permits the entry of sanction; it does not provide [the plaintiff] with a cause of action." (internal citations omitted)); 28 U.S.C. § 2072(b) [The Rules Enabling Act] ("Rules of procedure and evidence . . . Such rules shall not abridge, enlarge or modify any substantive right.").  And if Plaintiff's prayer for relief is reliant on the Court's finding cause to modify the judgment under Rule 63(d), then it fails because the Court does not find such cause.

Accordingly, Defendants' motion to dismiss Plaintiff's Rule 37 claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 36, and to close the case.

SO ORDERED.

Dated:  December 30, 2020
         New York, New York

_____
ANALISA TORRES
United States District Judge