```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
JOSEPH MAZZEI, individually and on behalf of
the Fee-Split Class,

                            Plaintiff,
        -against-

THE MONEY STORE, TMS MORTGAGE,
INC. and HOMEQ SERVICING, INC., WELLS
FARGO BANK N.A.,

                            Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/27/2021_

20 Civ. 3702 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Joseph Mazzei, brings this action against Defendants, The Money Store, TMS Mortgage, Inc., Homeq Servicing, Inc., and Wells Fargo Bank N.A., asserting claims under Federal Rules of Civil Procedure 60(d)(3) and 37 for fraud on the court and failure to obey discovery orders in *Mazzei v. The Money Store*, No. 01 Civ. 5694 (S.D.N.Y. 2001) ("*Mazzei I*"). Compl., ECF No. 6. Defendants moved to dismiss, and on December 30, 2020, the Court granted the motion (the "December Order"). ECF No. 48. Plaintiff now moves for reconsideration of that decision pursuant to Federal Rules of Civil Procedure 59. Pl. Mem., ECF No. 51. For the reasons stated below, Plaintiff's motion is DENIED.

**DISCUSSION**[1]

I.  Legal Standard

Motions for reconsideration are governed by Rule 59 of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, and are entrusted to the "sound discretion" of the district court. *Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (quotation marks and citation omitted). A court may grant a motion for reconsideration "to correct a clear error of law

---

[1] The Court assumes familiarity with the facts and history laid out in the December Order, and adopts its defined terms.

or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quotation marks and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

To that end, a party "may not use a motion under Rule 6.3 to advance new facts, issues or arguments not previously presented to the court." *McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) (quotation marks and citation omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." (quotation marks and citation omitted)). The burden rests with the party seeking reconsideration to "demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Davis v. Gap, Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y. 1999).

II. Timeliness

Defendants argue that Plaintiff's motion is untimely. Def. Opp'n at 1–3, ECF No. 54. A Rule 59 motion must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). The Court entered the December Order on December 30, 2020; the Clerk of Court signed the judgment on the same day, ECF No. 49, but the judgment was not entered on the docket until January 4, 2021, *id.* The Federal Rules are clear that the time starts to run upon "entry" of the judgment, here, January 4, 2021. As Plaintiff filed his motion for reconsideration on February 1, 2021, it fell within the 28-day time limit. Fed. R. Civ. P. 59(e); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, No. 09 Civ. 4256, 2015 WL 778202, at *2 (E.D.N.Y. Feb. 21, 2015).

III.     Rule 60(d)(3)

Plaintiff first argues that the Court erred in its ruling on Plaintiff's Federal Rule of Civil Procedure 60(d)(3) count, which alleged fraud on the court. Pl. Mem. at 1–2. Plaintiff does not object to the Court's holding on res judicata, and therefore, the Court does not reconsider its conclusion on that point. Thus, Plaintiff only objects to the Court's decision regarding the Inaccessibility Statements and the Data Availability Statements.

Plaintiff argues that the Court committed clear error in three ways: first, by overlooking that a portion of the alleged fraud was committed by Defendants' attorneys; second, by imposing an incorrect causality standard on the alleged fraud; and third, by concluding that Defendants' alleged fraud was excused by Plaintiff's lack of diligence in obtaining discovery.[2]

First, Plaintiff argues that because Defendants' attorneys "Hans Kobelt, Daniel Pollack and in-house counsel Mark Buechner [] repeatedly made allegedly false representations or fraudulently omitted critical information about the [f]ee [p]ayment [d]ata to the court in *Mazzei I*," the alleged fraud rises to the high standard required by Rule 60(d)(3). Pl. Mem. at 5. "When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court." *E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008) (quotation marks and citation omitted); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (holding that fraud on the court is "only that species of fraud which does or attempts to[ ] defile the court

---

[2] Plaintiff also notes that at one point, the Court stated that Plaintiff "has not shown by clear and convincing evidence that the issue of Fee Payment Data on NIS or the Fee Payment Data's inaccessibility was sufficiently central to the truth-finding process," December Order at 13 (quotation marks and citation omitted), which Plaintiff contends was error because, at the motion to dismiss stage, Plaintiff need only make sufficient allegations, and need not offer evidence. Pl. Mem. at 6 n.3. However, as the Court noted multiple times, and concluded, it based its determination on Plaintiff's allegations, rather than any evidence. *See* December Order at 7, 15 ("These allegations do not give rise to clear and convincing evidence of the grave miscarriage of justice required for fraud on the court." (quotation marks omitted)).

3

itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.").

Here, however, though Plaintiff has alleged that Defendants' attorneys made Data Availability and Inaccessibility Statements to the court, and that the Data Availability and Inaccessibility Statements were false, Plaintiff has not alleged by the high clear and convincing evidence standard that the attorneys made those statements *knowingly*. *See Rusk v. New York State Thruway Auth.*, No. 10 Civ. 544, 2021 WL 230917, at *6 (W.D.N.Y. Jan. 22, 2021) ("[I]mportantly, the issue of concern is an attorney's deliberate or knowing misrepresentation, not a negligent or inadvertent one."). In the statements referenced in the complaint, Defendants' attorneys rely on affidavits, declarations, or evidence presented by non-lawyers or third parties for the vast majority of the attorneys' statements. *See, e.g.*, *Mazzei I*, ECF Nos. 197 at 10:23–11:8 (relying on statements from Fidelity), 303 (relying on statements from LPS), 305 ¶ 15 (stating that counsel was "informed" of inaccessibility), 329 at 29:19–25 (citing "Goldberg letters" from Fidelity's counsel), 360 at 20 (quoting non-lawyer Hymer's declaration); *Mazzei v. Money Store*, No. 15-2054 (2d Cir. Dec. 9, 2015), ECF No. 113 at 16, 27 (citing the Honorable John G. Koeltl's opinions). Although the attorneys may have been negligent in not investigating the truth of these matters, Plaintiff has not demonstrated by his allegations that the *attorneys* knew the statements were false. Accordingly, though "the nature and extent of an attorney's involvement in the fraud is a significant consideration," *Rusk*, 2021 WL 230917, at *9, it is not dispositive here and cannot overcome the high bar of finality, *Scherer v. City of New York*, No. 03 Civ. 8445, 2007 WL 2710100, at *7 (S.D.N.Y. Sept. 7, 2007) ("Defense counsel may not have been as candid as they could have been . . . . However, their failure to fully inform the [c]ourt, while disappointing, did not constitute a fraud upon the [c]ourt.").

Second, Plaintiff argues that the Court imposed too high a causality standard on the alleged fraud's impact on *Mazzei I*, based on the Supreme Court's holding in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); he contends that fraud on the court occurred because the alleged misrepresentations were central to the *Mazzei I* courts' decisions. Pl. Mem. at 5–11. However, *Hazel-Atlas* did not decide a causality standard; though it expressed skepticism of the circuit court's appraisal that the fraudulent article at issue was not "basic" to the underlying decision, it concluded that "the circumstances [do not] call for such an attempted appraisal" because the defendants "thought the article material" and therefore "[t]hey are in no position now to dispute its effectiveness." *Hazel-Atlas*, 322 U.S. at 246–47.

Therefore, fraud on the court is only actionable under Rule 60(d)(3) when it is a "grave miscarriage of justice," *United States v. Beggerly*, 524 U.S. 38, 47 (1998), that "is directed at, not contemplated by, and not redressable within, the ordinary processes of the rough-and-tumble world of adversarial litigation," *Rusk*, 2021 WL 230917, at *6. "[T]he conduct complained of [must have] prevented the moving party from fully and fairly presenting his case." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004). Examples include "bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing a judge." *Lutin Invs., Ltd. v. Nigerian Nat'l Petroleum Corp.*, No. 12 Civ. 5191, 2016 WL 899319, at *4 (S.D.N.Y. Mar. 2, 2016); *see also LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) (explaining that "nondisclosure during pretrial discovery," "after-discovered evidence of alleged perjury by a witness," and the existence of "other fabricated evidence" are insufficient (citations omitted)), *aff'd*, 367 F. App'x 180 (2d Cir. 2010). The fraud on the court analysis thus "focus[es] on the degree to which the party's alleged misconduct interferes with the judicial machinery itself." *Rusk*, 2021 WL 230917, at *5 ("In the context of discovery abuses, spoliation of evidence, nondisclosure, and the like, courts must take

5

care to avoid stretching the notion of fraud on the court too broadly.").[3] The Court's analysis of centrality turned on that factor: whether the alleged fraud was central to the truth-finding process, that is, whether it stopped the "the judicial machinery" from "its impartial task of adjudging cases." December Order at 14 (quoting *LinkCo*, 367 F. App'x at 182).

Upon reconsideration, the Court still does not agree that Defendants' alleged fraud rose to this level. In *Gleason v. Jandrucko*, two detectives allegedly perjured themselves in a previous case by stating that two witnesses to a crime had identified the plaintiff with certainty, when they had not, and also withheld evidence that could have demonstrated plaintiff's innocence. 860 F.2d 556, 557–58 (2d Cir. 1988). Based on this evidence, the plaintiff settled his case. *Id.* at 558. Six months after the court denied the plaintiff's motion to set aside the judgment, it was discovered that the detectives had lied, and that the witnesses were in fact sure that plaintiff was innocent. *Id*. The plaintiff argued that the fraud on the court induced him to settle his case. *Id.* The Second Circuit held that this was not fraud on the court; the issue of lack of probable cause

---

[3] Although, as Plaintiff observes, a court's reliance on misstatements is a necessary condition to nondisclosure being fraud upon the court, the cases do not clearly establish that it is a sufficient condition in this Circuit, such that fraud being discoverable and remediable within the bounds of the litigation is not also a dispositive question in the analysis. *See In re Levander*, 180 F.3d 1114, 1119–20 (9th Cir. 1999) (finding fraud upon the court where the fraud at issue could not have been discovered within the bounds of the litigation); *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, No. 14 Civ. 9075, 2017 WL 2414805, at *2 (S.D.N.Y. June 2, 2017) (addressing the question under the lower standard of a sanctions motion in the case in which the fraud took place); *Crown Awards, Inc. v. Trophy Depot, Inc*., No. 15 Civ. 1178, 2017 WL 564885, at *12 (S.D.N.Y. Feb. 13, 2017) (noting that certain falsehoods did not qualify as fraud on the court because they were discovered during the normal litigation processes); *In re Waters*, No. 99 Br. 31833, 2008 WL 384571, at *10 (Bankr. D. Conn. Feb. 8, 2008) (applying the reliance standard when assuming but not finding fraud on the court was otherwise appropriate), *adhered to on denial of reconsideration*, No. 99 Br. 31833, 2008 WL 2756916 (Bankr. D. Conn. July 14, 2008), and *adhered to on denial of reconsideration*, No. 99 Br. 31833, 2008 WL 4829844 (Bankr. D. Conn. Oct. 24, 2008), and *adhered to on denial of reconsideration*, No. 99 Br. 31833, 2008 WL 4829844 (Bankr. D. Conn. Oct. 24, 2008); *RCI HV, Inc. v. Transtec (RC) Inc*., No. 02 Civ. 4307, 2004 WL 1197246, at *12 (S.D.N.Y. May 28, 2004) ("The denial to defendant of a fair opportunity to answer and pursue plaintiff's claims on the merits is an injustice that is 'sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." (quoting *Beggerly*, 524 U.S. at 46)); *Petersville Sleigh Ltd. v. Schmidt*, 124 F.R.D. 67, 71–72 (S.D.N.Y. 1989) (denying a motion for fraud on the court and differentiating a case in which an attorney falsely told the court, after a settlement had been negotiated, that he would pay a lien—a fraud undiscoverable within the bounds of the litigation); *Interstate Invs., Inc. v. United States*, 287 F. Supp. 374, 382 (S.D.N.Y. 1968) ("Plainly the fact that false or misleading testimony was given during the course of a judicial proceeding does not constitute a fraud upon the court unless it appears that the court was so misled by such testimony as to render a decision based on a mistaken view of the material facts."), *aff'd*, 393 U.S. 479 (1969).

and bad faith were before the court in the earlier case, and so plaintiff "cannot be heard now to complain that he was denied the opportunity to uncover the alleged fraud." *Id.* at 559. The court noted that although the officers lied at their depositions, "nothing prevented plaintiff during the pendency of the prior proceeding from deposing the two eyewitnesses to the bank robbery in order to impeach the officers' testimony." *Id.* Despite the newly uncovered evidence that plaintiff contended was "indicative of a broad conspiracy and cover-up which transcended mere perjury and nondisclosure," the Second Circuit affirmed the district court's finding that "plaintiff had ample opportunity in the prior proceeding to uncover the alleged fraud." *Id.* at 560.

Conversely, in *Hazel-Atlas*, the fraud at issue was not addressable within the litigation. There, the plaintiff's investigator interviewed an individual who had submitted a fraudulent article to the court. 322 U.S. at 242. The investigator attempted to obtain from the individual an affidavit regarding the article's authorship. *Id.* The individual persisted in stating to the investigator that he had written the article. *Id.* Unbeknownst to the plaintiff, before and at the time of the interviews, the defendant had secretly been in contact with that individual and acquired reassurances that the individual would lie to the plaintiff's investigator and continue the fraud of claiming authorship. *Id.* at 242–43. In fact, the defendant would later pay that individual for repeating that lie several times. *Id.* at 243. This conduct made it impossible for the plaintiff to demonstrate the fraud within the litigation, therefore "tampering with the administration of justice" itself. *Id.* at 246.

Here, the issue of Data Availability and Inaccessibility Statements were before the court since at least 2013, and in fact, Plaintiff challenged them multiple times in *Mazzei I*. *See* December Order at 3–5 (describing the litigation over the Data Availability and Inaccessibility Statements). Moreover, the broader issue of evidence on fee-splitting was also before the court, as the underlying issues of probable cause and bad faith were before the *Gleason* court. As

7

Judge Koeltl observed, though Plaintiff did serve subpoenas on Fidelity and its successors, to which they responded stating they had no information, nothing prevented Plaintiff from attempting to enforce the subpoena, or deposing Fidelity or the law firms. *Mazzei I*, ECF No. 436, at 139:20–140:9, 147:20–150:3. Therefore, as in *Gleason*, the fraud was addressable within the litigation itself. *Rusk*, 2021 WL 230917, at *8 ("This is not to say that [p]laintiff knew or should have known of the particulars of the suspected spoliation and/or nondisclosure . . . [but] spoliation and non-disclosure of emails was an issue that [p]laintiff identified and considered during the underlying litigation, and he actively investigated that issue through the ordinary tools of pretrial discovery."). It did not, therefore, rise to the level of fraud on the court for a Rule 60(d)(3) motion.

In so ruling, the Court is not excusing Defendants' alleged fraud for Plaintiff's lack of diligence. Rather, the Court is observing that the fraud was redressable within the litigation itself, and, therefore, is not actionable under Rule 60(d)(3).

IV.   Rule 37

Finally, Plaintiff objects to the Court's dismissal of his Rule 37 count, arguing that the dismissal without discussion of the merits violated *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177–78 (2d Cir. 2008), in which the Second Circuit held that "[w]here the district court explained that it would award costs, and then failed to do so, some explanation was warranted as to why the court found this was a case where the failure to comply with the court's order was substantially justified or circumstances made an award of expenses unjust." Pl. Mem. at 13–15. However, Plaintiff does not cite a case contradicting the Court's conclusion that Rule 37 does not create an independent cause of action, or that, after finding that dismissal of Plaintiff's Rule 60(d)(3) count was appropriate and, therefore, dismissing all the independent causes of action in

the complaint, the Court was empowered to nevertheless consider a Rule 37 claim.[4]  *Id.*; Pl. Reply, ECF No. 55.

Accordingly, Plaintiff's motion for reconsideration of the Court's dismissal of its Rule 37 cause of action is DENIED.

## CONCLUSION

Accordingly, Plaintiff's motion for reconsideration is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 50.

SO ORDERED.

Dated: September 27, 2021
       New York, New York

                                              ANALISA TORRES
                                              United States District Judge

---

[4] In the December Order, the Court incorrectly referenced Federal Rule of Civil Procedure 63(d).  December Order at 16.  As Defendants observe, this is a typographical error, and should reference Rule 60(d)(3).